## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **TAMMY JO MOOR,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 3:12-CV-02433-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner of** | } | |
| **Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OF DECISION</u>

Tammy Jo Moor ("Plaintiff") brings this action pursuant to Section 1631(c)(3) of Title XVI of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). *See also*, 42 U.S.C. § 1383(c)(3). Based upon the court's review of the record and the brief submitted by the Commissioner,[1] the court finds that the decision of the Commissioner is due to be affirmed.

## I.    Proceedings Below

This action arises from Plaintiff's application for Title XVI SSI, dated August 7, 2008, alleging disability beginning on August 4, 2008. (Tr. 128). Plaintiff's application was initially denied by the Social Security Administration on January 30, 2009. (Tr. 83). On February 17, 2010, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 91). Plaintiff's request was granted and a hearing was held on February 8, 2011. (34-64, 91). In his decision, dated April 1, 2011, the ALJ determined Plaintiff had not been under a disability within

---

[1] Plaintiff did not submit a brief to this court.

the meaning of § 1614(a)(3)(c) of the Act since August 4, 2008, the date Plaintiff's application was filed. (Tr. 16-32). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

Plaintiff was forty-seven years old at the time of the hearing. (Tr. 38, 128). Plaintiff alleges she has been disabled since August 4, 2008 because of back pain and hepatitis B and C infection. (Tr. 156-63, 182-90, 203-10). Additionally, Plaintiff introduced evidence that she was suffering from depression and anxiety. (Tr. 38, 156-63). Plaintiff previously worked as a certified nursing assistant, a nursing home cleaner, and a motel cleaner. (Tr. 134, 158, 174, 193).

During her alleged period of disability, Plaintiff received treatment primarily from Franklin C. Fetter Family Health Center and Helen Keller Hospital. (Tr. 332-58, 419-30). Plaintiff was seen at Fetter Family Health Center on June 10, 2009 when she complained of having anxiety problems in public places. (Tr. 343). An appointment on January 20, 2009 showed Plaintiff tested positive for hepatitis B and C. (Tr. 349, 354-55). No significant limitations resulting from her hepatitis were noted by the physician. Plaintiff was seen next by a Helen Keller Hospital primary care physician on August 19, 2010 when she reported that a fall two weeks before had caused chronic back and ankle pain. (Tr. 428). She was seen again at Helen Keller Hospital on September 21, 2010 complaining of similar back and ankle pain. (Tr. 421). A radiology report from the visit revealed the alignment of Plaintiff's spine appeared normal and showed no evidence of fracture or subluxation.[2] (Tr. 425). Plaintiff also was treated at Med Plus Muscle Shoals on February 1, 2011 where her physician noted Plaintiff complained of back pain and fatigue and suffered from hypertension. (Tr. 434-35). Finally, Plaintiff had an

---

[2] Dr. James D. Snipes also noted "threaded fixation cages within the L4-5 disc space from previous fusion" were present in Plaintiff's spine. (Tr. 425). Plaintiff had surgical lumbar fusion of her lumbar spine in 1999. (Tr. 247, 321, 375, 375, 438). No complications from that surgery are noted in the record.

MRI taken at Open MRI which revealed "[m]oderate focal right paramedian disc herniation at L5-S1.  Unremarkable postoperative appearance at L4-5.  Disc bulging with mild spinal stenosis at L3-4.  Disc bulging at L2-3."  (Tr. 438).

Plaintiff's medical records also show several consultative examinations and residual functional capacity ("RFC") assessments regarding her disability claim.  (Tr. 294-331, 359-418).  These records indicate Plaintiff has had several physical problems, including fatigue and weakness from her hepatitis B and C and back pain.  (Tr. 296, 322, 375, 377-78, 408).  On January 2, 2009, a consultative examination revealed Plaintiff complained of intermittent back pain that was "very severe at times."  (Tr. 296-97).  However, the examiner noted Plaintiff was "tender in the right sacroiliac area, but nontender over the spine itself . . . [s]he has a positive straight leg raise for pain at 90 degrees on the right, but not on the left."  (Tr. 297).  Plaintiff was next seen on January 29, 2009 for a Physical RFC Assessment by a state examiner.  (Tr. 320).  The examiner reported Plaintiff's physical impairments would allow her to occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand or walk for about six hours in an eight hour workday, sit for about six hours in an eight hour workday, and occasionally kneel, stoop, crouch, and crawl.  (Tr. 321-22).  Plaintiff's only reported full limitation is that she cannot climb ladders or scaffolds.  (Tr. 322).  The examiner also noted Plaintiff frequently performed household chores and the physical examination showed she was not tender on her spine.  (*Id.*).

Plaintiff was seen on November 13, 2009 for a consultative examination.  (Tr. 374).  Examining physician Dr. Lawrence Long noted Plaintiff had no acute injury in the lumbar spine and the alignment of her spine was normal.  (Tr. 375).  The other examining physician, Dr. Helen O'Donnell, reported Plaintiff's spine was "[n]ormally aligned.  Symmetrically muscled, well muscled.  No abnormalities of tone or texture.  No tenderness to palpitation . . . There is

tenderness to palpation of the low back.  There is pain in the low back with straight leg raise."
(Tr. 379).  Dr. O'Donnell also stated Plaintiff could be "expected to walk short distances and
stand for short periods of time . . . [r]epetitive bending, squatting, kneeling, and lifting overhead
would all likely increase pain of DDD/djd lumbar spine."  (Tr. 380).  Plaintiff again had a
Physical RFC analysis on December 28, 2009.  (Tr. 402-409).  Examining physician Dr.
Diosdado Irlandez reported Plaintiff can occasionally lift and carry twenty pounds, frequently lift
and carry ten pounds, stand and walk about six hours in an eight hour workday, sit for a total of
about six hours in an eight-hour workday, periodically alternate sitting and standing to relieve
pain or discomfort, and push and pull an unlimited amount.  (Tr. 403).  Additionally, Dr. Irlandez
noted Plaintiff "is able to walk without AD w/ normal gait; would have increased pain wiht [sic]
repetitive bending, squatting, kneeling and lifting . . ." but that the "condition does cause some
limitations in these areas but not to the extent [Plaintiff] alleges."  (Tr. 408).

The records further indicate Plaintiff is suffering from anxiety and depression.  (Tr. 295-
96, 300-301, 309, 311).  During her consultative examination on January 2, 2009, Plaintiff
admitted she attempted suicide twice prior to her alleged period of disability.[3]  (Tr. 295, 300,
318).  Further, Plaintiff stated that while she suffered previously from alcohol dependence and
cocaine abuse, she no longer drinks alcohol or uses illicit drugs.[4]  (Tr. 295-96, 314).  On January
8, 2009, however, Plaintiff denied any current suicidal intent and reported she only suffered
panic attacks about twice a week and mild symptoms of anxiety.  (Tr. 300-01).  Plaintiff's
examiner, Dr. Leah T. Biorn, noted Plaintiff appeared to suffer from "[m]ajor depressive
disorder, recurrent, moderate" and panic disorder.  (Tr. 301).  In a later psychiatric review for the

---

[3] Plaintiff stated she first attempted suicide when she was seventeen and then again in 2004.  (Tr. 295).

[4] On January 8, 2009, however, Plaintiff admitted that she still consumes alcohol.  (Tr. 300).  She stated she
only consumes about three beers at week instead of as much a a fifth of vodka per day as she did prior to her claim
of disability.  (Id.).  The record contains no evidence of drug remission.

period of August 4, 2008 to January 29, 2009, Dr. Michael Neboschick noted Plaintiff showed no episodes of decompensation and only mild to moderate difficulties in maintaining daily living and social functioning.  (Tr. 316).  On January 29, 2009, Dr. Neboschick conducted Plaintiff's first Mental RFC Assessment.  (Tr. 328-31).  Dr. Neboschick indicated Plaintiff is not significantly limited in her understanding and memory or in her ability to adapt to changes.  (Tr. 328-29).  He stated Plaintiff is limited only moderately in her concentration, persistence, and social interaction, and that she is not markedly limited in any mental capacity category.  (*Id.*).  Further, he noted Plaintiff is "able to follow simple instructions," "able to work with nonthreatening supervision," "can maintain concentration for simple tasks for two hour block of time" and can "respond to simple changes."  (Tr. 330).

On October 23, 2009, Plaintiff was seen by Dr. Thomas Muehleman for a consultative examination.  (Tr. 368).  Dr. Muehleman reported Plaintiff suffered from generalized anxiety disorder, moderate major depressive disorder, and alcohol dependence in partial sustained remission.  (Tr. 368-71).  These issues combine to create mild to moderate impairments in her "ability to tolerate stress and pressures associated with day-to-day work activity."  (Tr. 371).  In Plaintiff's next psychiatric review on December 23, 2009, examining physician Dr. Dan Vandivier reported Plaintiff had no limitations for episodes of decompensation and only mild to moderate limitations for daily living, maintaining social functioning, and concentration.  (Tr. 393-94).  Dr. Vandivier reported Plaintiff was not markedly limited in any category, and his findings were almost entirely similar to those in Dr. Neoschick's report.  (Tr. 397-99).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 416.920(b).  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.

20 C.F.R. § 416.920(b).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 416.972(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 416.972(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. §§ 416.974, 416.975.  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 416.920(c).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.   If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 416.909.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 416.920(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 416.920(f).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 416.920(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in

significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 416.920(g), 416.960(c).

In the instant case, the ALJ determined that Plaintiff: (1) has not engaged in substantial gainful activity since the onset of her alleged disability; (2) does have medically determinable impairments—namely, hepatitis B and C, hypertension, a history of a spinal fusion, a history of cocaine and alcohol abuse, anxiety, and depression—that more than minimally affect her ability to perform work-related activities; but (3) does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 21).

According to the ALJ, Plaintiff's subjective complaints and Dr. O'Donnell's consultative physical examination concerning Plaintiff's impairments are inconsistent with the medical evidence on record.  (Tr. 25).   After consideration of the record, the ALJ found Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) and that she has the following limitations:

> occasional[ly] [lift] and [carry] up to twenty pounds and frequent[ly] [lift] and [carry] up to ten pounds.  She can occasionally stoop, kneel, crouch, and crawl, but should not work at unprotected heights.  Her work should not involve climbing ropes, ladders, or scaffolding and she should not work in areas of extreme cold or heat . . . [she has] an ability to understand and remember simple instructions and procedures requiring brief initial learning periods; sustain concentration, effort, and pace for simple tasks requiring little independent judgment and involving minimal variations; and perform these activities with requisite schedules of work and breaks.  She can interact frequently as needed with supervisors and peers sufficiently for tasks completion and require no more than occasional interaction with the public.  She would have an ability to adapt adequately to situation conditions and changes with reasonable support and structure . . . would be limited to unskilled work with no more than occasional interaction with supervisors, co-workers, and the general public.

(Tr. 22-26).

The ALJ then posed several hypotheticals to the vocational expert ("VE"). (Tr. 54-62). The VE testified Plaintiff's RFC allows her to perform her past relevant work and several other jobs in the national economy. (Tr. 55-62). Based on the testimony of the VE, the ALJ found Plaintiff capable of performing past relevant work as a motel cleaner. (Tr. 26). Further, the ALJ found Plaintiff can perform a significant number of jobs in the national economy, all of which Plaintiff can work with the above-mentioned limitations. (Tr. 27). Thus, the ALJ concluded Plaintiff is not disabled as defined by the Act and therefore not entitled to a period of SSI. (*Id.*).

## III.   Plaintiff's Argument for Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, vacated and reversed, or in the alternative, remanded for further consideration. Plaintiff did not submit a brief to the court, so the court will review the ALJ's decision to determine whether it is supported by substantial evidence and whether proper legal standards were applied.

## IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the

decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.    Discussion

The court will review the ALJ's five-step decision to determine whether it is supported by substantial evidence and whether the proper legal standards were applied. *See* 20 C.F.R. §§ 404.1520, 416.920; *Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Throughout the five-step analysis, Plaintiff bears the burden of establishing the existence of a disability. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

### 1.    The ALJ's Determination that Plaintiff has not Engaged in Substantial Gainful Activity Since August 4, 2008 is Supported by Substantial Evidence.

First, the ALJ must determine whether Plaintiff has engaged in substantial gainful activity since her alleged disability onset date of August 4, 2008. *See* 20 C.F.R. § 416.920(a)(4)(i). Substantial gainful activity is defined as work that "involves significant mental and physical activities and is usually performed for pay or profit." *Johnson v. Sullivan*, 929 F.2d 596, 597 (11th Cir. 1991). *See also* 20 C.F.R. §§ 416.972, 416.973. In this case, the ALJ

determined Plaintiff "had not engaged in substantial gainful activity since August 4, 2008." (Tr. 21). The record contains no evidence Plaintiff worked for pay or profit during the period of alleged disability. Plaintiff's last employment was at an Oklahoma Nursing Home in 2005. (Tr. 134, 158, 174, 193). In the absence of contradictory evidence, the court finds substantial evidence supports the ALJ's determination that Plaintiff has not engaged in substantial gainful activity since August 4, 2008.

### 2. The ALJ's Determination that Plaintiff has Severe Medically Determinable Impairments is Based on Substantial Evidence.

Second, the ALJ must determine whether Plaintiff has a medically determinable physical or mental impairment that is severe or a combination of impairments that is severe. *See* 20 C.F.R. § 416.920(c). Plaintiff has the burden of establishing severity of the impairment. *See McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986). However, courts do not require a high standard for establishing severity at this step. An impairment is not severe only if it is a "slight abnormality which has a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see* 20 C.F.R. § 416.921. Here, the ALJ determined Plaintiff had the following severe impairments: "hepatitis B, hepatitis C, hypertension, a history of a spinal fusion, a history of cocaine and alcohol abuse, anxiety, and depression." (Tr. 21). The medical evidence on record shows Plaintiff tested positive for hepatitis B and C and has had reports of significant back pain. (Tr. 296-97, 322, 349, 379-80, 408). These reports state the repetitive bending and moving that would be required in work would increase Plaintiff's pain. (Tr. 322, 408). Further, there are several records indicating Plaintiff suffers from anxiety and depression. (Tr. 300-01, 368-71, 393-94). Thus, the court

finds substantial evidence supports the ALJ's determination that Plaintiff's impairments would interfere with her ability to work.

### 3. The ALJ's Determination that Plaintiff's Impairment Does Not Meet or Equal the Impairments Listed is Supported by Substantial Evidence.

Third, the ALJ must look to whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.   The claimant bears the burden at this step of proving she has "an impairment [that] meets or equals a listed impairment. *Wilkinson ex. rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).   In order for a claimant to meet a listing, she must "have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); *see also* 20 C.F.R. § 416.926(a)-(d).   In order to equal a listing, the record must be "at least equal in severity and duration to the listed findings." *See* 20 C.F.R. § 416.926(a).

Here, the ALJ determined that while Plaintiff suffers from severe physical impairments, these impairments are not "severe enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4." (Tr. 21).   Because Plaintiff submitted no brief to this court, she has not pointed to a specific listing the ALJ erred in not finding her impairment meets or equals one of the listed impairments.   The court finds the ALJ's decision is supported by substantial evidence as the record evidence regarding Plaintiff's impairments, either singly or in combination, including her hepatitis B, hepatitis C, and hypertension, does not appear to meet or medically equal any of the impairments listed in Appendix 1, Subpart P.

The ALJ also considered whether Plaintiff's mental impairments, singly or in combination with her other impairments, meet or equal listings 12.04, 12.06, and 12.09 and determined Plaintiff's impairments do not meet the paragraph B criteria necessary to equal a listing. (Tr. 22). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Under Paragraph B of these listings, Plaintiff's mental impairments must cause marked limitations in at least two of three categories—activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace—or must cause a marked limitation in one of the three categories and repeated episodes of decompensation. 20 C.F.R. Part 404, Subpart P, Appendix 1. The medical records indicate Plaintiff was seen by two different physicians for Mental RFC Assessments. (Tr. 328-31, 397-400). Both physicians reported Plaintiff was either not significantly limited or only moderately limited in all mental assessment categories. (Tr. 328-29, 397-98). Neither physician reported Plaintiff had any marked limitations. (*Id.*). Because the record is absent of any indication of marked limitations as required by the listings, the court finds substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

**4. The ALJ's Determination that Plaintiff's RFC Allows Her to Perform Her Prior Work is Supported by Substantial Evidence.**

Fourth, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 416.920(f). Plaintiff still bears the burden to show disability and at this step must prove she has "the inability to perform [her] previous work." *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). *See also Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001). For convenience, the court will divide this step into two components. First, the court will determine whether substantial evidence exists supporting the ALJ's RFC finding. Second, the

court will decide whether the ALJ relied properly on the VE's testimony regarding whether Plaintiff can perform her past relevant work.

### a. The ALJ's RFC Finding.

The court finds substantial evidence exists in support of the ALJ's determination that Plaintiff's RFC allows her to perform light work.  (Tr. 22).  Residual functional capacity is defined as "an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite h[er] impairments."  *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997) (*citing* 20 C.F.R. § 404.1545(a)).  Plaintiff provided extensive evidence from primary physicians and consultative examiners regarding her alleged disability.  (Tr. 294-302, 306-58, 367-72, 374-400, 402-409, 419-38).  She also testified before the ALJ, alleging her fatigue, depression, and serious back pain precluded her from working.  (Tr. 38-54).  However, the ALJ determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were inconsistent with the evidence of record.  (Tr. 23).

First, Plaintiff stated she is able to walk her dog outside several times a day, drive to stores, and perform chores around her house.  (Tr. 183-88).  She also stated in her Function Report she can swim and lift "twenty pounds or so" despite her alleged disability.  (Tr. 187-88).  Further, extensive medical evidence supports the ALJ's decision.  With regard to Plaintiff's alleged physical disability, several reports indicate the presence of possible chronic back pain.  (Tr. 297, 301, 375, 377-78, 408).  However, Plaintiff's Physical RFC Assessment on January 29, 2009 reports that despite her impairments, Plaintiff can occasionally lift twenty pounds, frequently lift ten pounds, stand and walk for about six hours in an eight-hour workday, and push and pull an unlimited amount.  (Tr. 321-22).  The assessment noted further that while Plaintiff had some tenderness in the right sacrum, she had normal gait and no sensory deficits, and that

her level of pain would not preclude work at the sedentary or light level.  (*Id.*).  An additional Physical RFC Assessment by Dr. Diosdado Irlandez on December 28, 2010 revealed the same limitations as described in the January 29, 2009 assessment.[5]  (403-04).  Moreover, Dr. Irlandez noted specifically in his examination that "[Plaintiff's] condition does cause some limitations in these areas but not to the extent [Plaintiff] alleges."  (Tr. 407).  Finally, an x-ray taken of Plaintiff's back on March 14, 2011 showed only "mild diffuse central disc bulging . . . moderate focal right paramedian disc herniation . . . unremarkable postoperative appearance . . . disc bulging with mild spinal stenosis."  (Tr. 438).  The court finds substantial evidence supports the ALJ's determination that Plaintiff's physical impairments would limit her to light work as defined in 20 C.F.R. § 416.967(b).

With regard to Plaintiff's alleged mental disability, a psychiatric review for the period of August 4, 2008 to January 29, 2009 revealed Plaintiff suffered only mild to moderate limitations in her daily activities and in maintaining social functioning and concentration.  (Tr. 316).  The report from a Mental RFC Assessment on January 29, 2009 stated Plaintiff was not "markedly limited" in any mental capacity category and was "not significantly limited" in most categories. (Tr. 328-29).  A consultative examination performed by Dr. Thomas Muehleman on October 23, 2009 showed although Plaintiff suffered from "major depressive disorder, current, moderate," she was only "mildly-to-moderately impaired in her ability to tolerate stress and pressures associated with day-to-day work activity."  (Tr. 370-71).  Finally, Plaintiff was seen by Dr. Dan Vandivier for another psychiatric review on December 23, 2009.  (Tr. 383-96).  Dr. Vandivier reported Plaintiff suffers from no marked limitations and no episodes of decompensation, again supporting Dr. Neboschick's findings that Plaintiff shows no significant limitations in most

---

[5] Dr. Irlandez also stated Plaintiff should periodically alternate sitting and standing to relieve pain or discomfort.  (Tr. 403).

mental capacity categories. (Tr. 393-94, 397-98). The court finds substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 416.967(b).

### b.  The ALJ's Reliance on the Vocational Expert's Testimony.

After making his RFC determination, the ALJ posed several hypotheticals to the VE regarding Plaintiff's prior work. (Tr. 55-62). In questioning a VE about a claimant's RFC, the ALJ must pose hypothetical questions which "comprehensively describes the claimant's impairments." *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985); *see also Hurley v. Comm'r of Soc. Sec.*, 147 Fed. Appx. 103 (11th Cir. 2005); *Wilson*, 284 F.3d at 1227. Here, the ALJ completely listed all of Plaintiff's limitations based on the determination of her RFC. (Tr. 55-56). When asked whether Plaintiff could perform her prior work of working as a motel cleaner, the VE testified Plaintiff's RFC allows her to meet the physical and mental demands of her prior work. (Tr. 56). Nothing in the record suggests there was any error in the ALJ's reliance on the VE's testimony. Thus, the ALJ properly determined Plaintiff was not disabled under § 1614(a)(3)(c) of the Act since she still could perform her prior work.[6]

### VI.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

---

[6] After the ALJ determined Plaintiff could perform her prior work, it was not necessary to continue to step five of the analysis to determine whether Plaintiff could perform other work. However, based on the VE's testimony, the ALJ found a significant number of jobs exist in the national economy that Plaintiff can perform. (Tr. 26-27). The ALJ's hypotheticals fully encompassed Plaintiff's limitations and he properly considered the VE's testimony. Thus, the court finds substantial evidence supports the ALJ's determination that Plaintiff could perform other work in the national economy.

**DONE** and **ORDERED** this _____26th_____ day of June, 2013.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE